**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JESSIE B.,[1]

Plaintiff,

v.

Case No. 2:25-cv-494

Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**MEMORANDUM OPINION AND ORDER[2]**

Plaintiff Jessie B. filed this Social Security appeal in order to challenge the Commissioner's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding *pro se*, Plaintiff has filed a Statement of Errors, which Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s decision is AFFIRMED because it is supported by substantial evidence.

**I. Summary of Administrative Record**

On February 5, 2019, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act. Plaintiff's application was denied initially and on reconsideration. In July 2020, ALJ Julianne Hostovich found that Plaintiff was not disabled. Plaintiff appealed the decision to the United States District Court for the

---

[1]Because of significant privacy concerns in social security cases, the Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

[2]The parties have consented to disposition by the undersigned magistrate judge. *See* 28 U.S.C. § 636(c).

Southern District of Ohio, which remanded the case following a joint motion to remand. The Appeals Council remanded the case back to the ALJ for further consideration.

On March 23, 2023, Plaintiff appeared with counsel and testified at a telephonic hearing before ALJ Hostovich. A vocational expert also testified. On August 2, 2023, the ALJ issued an adverse written decision, concluding that Plaintiff was not disabled. The Appeal Council denied further review. (Tr. 913-918). Plaintiff subsequently filed this judicial appeal, challenging the ALJ's decision.

The ALJ determined that Plaintiff—who was born in 1981, was 37 years old when the application was filed, and has at least a high school education—had not engaged in substantial gainful activity since February 5, 2019, the application date. (Tr. 925, 937).

Based on the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: multilevel degenerative disc disease, fibromyalgia, bilateral carpal tunnel syndrome, migraines, peripheral neuropathy, PTSD, generalized anxiety disorder, OCD, ADHD, and persistent depressive disorder. (Tr. 925). Considering Plaintiff's impairments individually and in combination, the ALJ determined that none met or medically equaled "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 926-29). The ALJ found that, despite these impairments, Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following exceptions:

- She can occasionally climb, balance, stoop, kneel, crouch, and crawl;
- She can frequently handle, finger, and feel, bilaterally;
- She cannot reach overhead, bilaterally;
- She can tolerate frequent exposure to extreme cold, wetness, fumes, odors, dust gases, and areas of poor ventilation;
- She can understand, remember, and carry out simple and routine tasks;
- She can make simple work-related decisions;
- She can adapt to routine workplace changes;

- She can have no interaction with the general public;
- She can have occasional interaction with supervisors and coworkers; and
- She cannot perform assembly line work.

(Tr. 929). The ALJ also found that Plaintiff did not have past relevant work. (Tr. 937). Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the representative occupations of non-postal mail clerk, collator, and photocopy machine operator. (Tr. 938). The ALJ concluded that Plaintiff was not disabled since February 5, 2019, the date the application was filed. (*Id.*).

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a disability. Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial

evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a), 416.912(a). A claimant seeking

benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

In this case, Plaintiff's filings include a broad range of asserted errors. Liberally construed, Plaintiff maintains that the ALJ misstated evidence concerning the onset and severity of her impairments, symptoms, treatment, medications, diagnoses, mental-status findings, and daily activities. (*See* Doc. 8). Plaintiff further challenges the ALJ's evaluation of opinion evidence and formulation of the RFC, including the absence of restrictions for breaks, absences, and an inability to sustain full-time work. Finally, Plaintiff disputes the vocational expert's job testimony.

**B. Plaintiff's Asserted Factual Discrepancies Do Not Warrant Remand**

Plaintiff identifies a number of asserted inaccuracies in the ALJ's discussion of her symptoms, treatment history, diagnoses, medications, daily activities, and functional capacity. (Doc. 8 at PageID 25-32). The Court has carefully considered those contentions, including Plaintiff's Reply. (Doc. 18). Several are contradicted by the contemporaneous administrative record cited in the ALJ's decision, while others reflect Plaintiff's disagreement with the ALJ's resolution of conflicting evidence. Neither warrants remand where the decision permits meaningful judicial review and is supported by substantial evidence. (Tr. 925-37).

For example, Plaintiff asserts that the ALJ relied only on older evidence (primarily records predating 2021), while disregarding more recent, updated records. (Doc. 8 at PageID 26-28). The decision itself, however, discusses behavioral-health records from

2021 and 2022; decreased grip strength documented in February 2022; recurrent carpal-tunnel symptoms beginning in 2021; updated electrodiagnostic testing; and later migraine treatment in November 2022. (Tr. 926, 931-35). The ALJ also explained that, after the March 2023 hearing, she further developed the record and admitted additional medical evidence. (Tr. 923). Thus, Plaintiff's claim that the ALJ relied only on older evidence is contradicted by the decision and cited record.

Plaintiff also maintains that she never reported being able to follow written instructions "perfectly" and that her providers did not find normal memory, attention, or concentration, as the ALJ stated. (Doc. 8 at PageID 25-26). However, the ALJ cited Plaintiff's Function Report, in which she stated: "I follow written instructions perfectly." (Tr. 237). The ALJ also cited behavioral-health records reflecting memory within normal limits and generally normal attention and concentration. (Tr. 927-28). At the same time, the ALJ acknowledged contrary consultative-examination evidence of impaired recent memory and mild impairment in attention and concentration in the decision. (Tr. 927, 931-32). Thus, Plaintiff's assertions identify conflicting evidence in the record that the ALJ was entitled to resolve in assessing the degree of Plaintiff's mental limitations. The Court may not reweigh that evidence. *See Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x. 586, 588 (6th Cir. 2019).

Plaintiff further challenges the ALJ's reliance on her reported daily activities, asserting that the ALJ failed to recognize that she performed certain tasks with assistance, intermittently, or with breaks. (Doc. 8 at PageID 29, 31). The ALJ cited Plaintiff's reports of child care, homeschooling, household tasks, and gym attendance as part of the evaluation of Plaintiff's alleged limitations. (Tr. 932, 935). The ALJ considered

her activities in the course of a broader symptom evaluation that also addressed Plaintiff's allegations, treatment history, and clinical findings. (Tr. 930-35). *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (finding that the ALJ may consider day-to-day activities as one factor in evaluating subjective allegations).

Plaintiff's remaining factual objections—including disputes about symptom terminology, medication and treatment history, particular diagnostic labels, the alleged onset date, and selected treatment notes—do not independently establish reversible error.[3] The Court addresses Plaintiff's more substantive challenges below.

### C. Substantial Evidence Supports the ALJ's Evaluation of the Evidence and RFC Determination

Plaintiff challenges the ALJ's RFC assessment. She does not dispute that the ALJ recognized numerous severe physical and mental impairments. (Tr. 925). Rather, Plaintiff contends that the ALJ understated the functional consequences of those impairments by discounting her reported symptoms, finding medical opinions unpersuasive, and omitting additional functional restrictions. (Doc. 8 at PageID 26-32).

The ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but found that the record did not support the full degree of limitation alleged. (Tr. 929-30). In reaching that conclusion, the ALJ considered Plaintiff's reported symptoms, treatment history, clinical findings,

---

[3] Plaintiff also raises several additional factual objections that do not require separate discussion. These include disputes concerning the alleged onset date; the ALJ's reference to "primary headache disorder"; the duration of Strattera treatment; the source of Plaintiff's PTSD symptoms; the frequency of panic attacks; diagnostic terminology; family-therapy and relationship evidence; and the details of Plaintiff's reported daily activities. (*See* Doc. 8 at PageID 25-32). Some of these contentions are inconsistent with the contemporaneous evidence cited by the ALJ; others reflect Plaintiff's preferred interpretation of the record or identify isolated wording disputes. None demonstrates a material error in the ALJ's RFC or Step Five analysis or warrants remand. *See Ulman v. Comm'r of Soc. Sec.,* 693 F.3d 709, 713-14 (6th Cir. 2012).

activities, medical opinions, and prior administrative medical findings. (Tr. 930-37). The ALJ limited Plaintiff to a restricted range of light work with limitations on postural activities, use of her hands and arms, environmental exposure, task complexity, workplace changes, and interactions with others. (Tr. 929). Upon review of the entire record, the Court finds that substantial evidence supports the ALJ's RFC determination.

The ALJ reasonably determined that the record did not establish greater limitations. With respect to physical limitations, the ALJ found degenerative disc disease, fibromyalgia, bilateral carpal-tunnel syndrome, peripheral neuropathy, and migraines to be severe impairments. (Tr. 925). The ALJ further discussed Plaintiff's carpal-tunnel surgeries, post-surgical hand symptoms, electrodiagnostic testing, and migraine treatment. (Tr. 933-35). But the ALJ also cited generally mild imaging findings, examinations reflecting normal gait, intact sensation, largely preserved strength, and other findings inconsistent with disabling limitations; treatment that afforded some relief; later testing reflecting mild or borderline recurrent carpal-tunnel syndrome; and migraine records showing improvement in the severity and duration of Plaintiff's headaches with medication. (Tr. 932-35). After reviewing the longitudinal record, the ALJ concluded that an RFC limiting Plaintiff to light work with additional postural restrictions, restrictions on reaching and fine manipulation, and limited exposure to environmental triggers, adequately addressed Plaintiff's physical symptoms and limitations. (Tr. 935). Plaintiff may reasonably disagree with the ALJ's weighing of the evidence underlying the determination, but this Court may not reweigh it.

With respect to mental limitations, the ALJ considered Plaintiff's panic attacks, anxiety, depression, PTSD symptoms, ADHD, attention and concentration difficulties,

impaired recent memory, and reported social limitations. (Tr. 927-28, 930-33). The ALJ also cited treatment records documenting periods of improvement and generally normal behavior, speech, thought processes, orientation, memory, attention, and concentration. (*Id.*). The RFC accommodates the supported mental limitations by restricting Plaintiff to simple, routine work and decisions; routine workplace changes; no public interaction; occasional interaction with coworkers and supervisors; and no assembly-line work. (Tr. 929). The ALJ further determined that the longitudinal record did not support greater restrictions, citing, among other evidence, Plaintiff's reported activities, behavioral-health records attributing some difficulties to acute family stressors and financial problems, and records reflecting medication noncompliance. (Tr. 935). The Court finds no error in the ALJ's determination.

The ALJ also adequately evaluated the opinion evidence under the applicable regulations. *See* 20 C.F.R. § 416.920c. The ALJ found Mr. Steinhoff's opinion unpersuasive because it offered generalized statements without specific functional limitations. (Tr. 936). The ALJ found Dr. Parsley's opinion unpersuasive because, although it characterized Plaintiff's limitations as mild to moderate, it did not define those terms or otherwise specify functional limitations. (Tr. 936-37). The ALJ found the state-agency psychological opinions partially persuasive because they were consistent with the longitudinal behavioral-health record, while declining to adopt a superficial-interaction limitation that the ALJ determined was not supported by the record. (Tr. 936). Specifically, the ALJ noted that "there is nothing in the objective medical evidence to suggest the claimant would need to limit the 'depth, kind, and quality of [her] social interactions' in this manner." (*Id.*). Finally, the ALJ found the marked-to-extreme limitations assessed by

therapist Benthin-Staley and the highly restrictive limitations assessed by Dr. Woo both unpersuasive. (Tr. 937). The ALJ explained that Benthin-Staley's opinion was grossly inconsistent with the unremarkable mental status examinations throughout the period at issue and Dr. Woo's 2020 opinion was unsupported by the full longitudinal treatment record reflecting periods of stability and improvement. (*Id.*).

The ALJ's explanations address the required factors of supportability and consistency. *See* 20 C.F.R. § 416.920c(b)(2), (c)(1)-(2). And although Plaintiff emphasizes her treatment relationships with Dr. Woo and Benthin-Staley, the current regulations do not require the ALJ to defer to a treating source's opinion. 20 C.F.R. § 416.920c(a). *See Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022).

Finally, substantial evidence supports the ALJ's decision not to include additional restrictions for off-task behavior, unscheduled breaks, or absenteeism. Plaintiff generally contends that her impairments prevent her from sustaining regular work activity, asserting that she requires frequent breaks when performing household tasks, may be unable to perform activities several times per week because of her symptoms, and has a history of employment termination and missed appointments attributable to her impairments. (Doc. 8 at PageID 32). To the extent that Plaintiff contends that the RFC should have included restrictions for off-task behavior, unscheduled breaks, or absenteeism, she identifies no persuasive medical opinion or other evidence requiring such restrictions. The ALJ reasonably found Dr. Woo's opinion—including his proposed limitations regarding time off task and absences—unpersuasive because it was unsupported by the longitudinal record. (Tr. 937). The ALJ likewise reasonably found Ms. Benthin-Staley's marked and

extreme limitations inconsistent with the generally unremarkable mental-status examinations. (*Id.*). As noted above, the Court may not reweigh that evidence, and the ALJ was required to include only those limitations she found supported by the record. Accordingly, substantial evidence supports the RFC determination.

**D. Substantial Evidence Supports the ALJ's Step Five Finding**

Plaintiff also challenges the ALJ's Step Five finding. She argues that the representative occupations of collator and photocopy machine operator are not standalone occupations, but duties performed by a non-postal mail clerk. On this basis, she argues that the vocational expert effectively only identified one representative occupation. (*See* Doc. 18 at PageID 1894, 1911-12). This unsupported assertion does not undermine the vocational expert's testimony identifying three separate occupations by DOT code: "a non-postal mail clerk (DOT# 209.687-026, SVP 2, light, 43,000 jobs), a collator (DOT# 653.687-010, SVP 2, light, 25,000 jobs), and a photocopy machine operator (DOT# 207.685-014, SVP 2, light, 20,000 jobs)." (Tr. 938). Nor does it establish error in the ALJ's resulting Step Five finding. (Tr. 938, 999).[4]

**III. Conclusion and Order**

---

[4] To the extent that Plaintiff also argues that Bureau of Labor Statistics data reflects a different number of jobs for the non-postal-mail clerk position (*see* Doc. 15 at PageID 1886), that argument likewise does not warrant remand. The ALJ relied on the vocational expert's testimony in response to a hypothetical question that incorporated the limitations the ALJ found supported by the record. (Tr. 999). The vocational expert identified three representative occupations and explained that the job-number estimates were based on multiple vocational and labor-market sources, together with the expert's professional knowledge and experience. (Tr. 1007-08). Even excluding the challenged non-postal mail clerk occupation, the vocational expert identified 45,000 positions in the national economy in the remaining occupations. (Tr. 938, 999). Accordingly, Plaintiff has not established that the ALJ's Step Five finding lacks substantial evidentiary support.

In sum, the ALJ applied the correct legal framework, adequately considered Plaintiff's impairments, evaluated the medical-opinion evidence under the applicable regulations, and provided reasons supported by the administrative record for the RFC determination. The ALJ's decision reflects no reversible error and is supported by substantial evidence.

Accordingly, **IT IS ORDERED THAT** the Commissioner's decision is **AFFIRMED,** and this case is **CLOSED.**

*s/Stephanie K. Bowman* ____________
Stephanie K. Bowman
Chief United States Magistrate Judge